**Bessie R. BARNES, Dorothy B. Goetz, Gertrude M. Cox, Jean Montag, and Jeannette Warman, Petitioners,**

**v.**

**OFFICE OF PERSONNEL MANAGEMENT, Respondent.**

**Nos. 91–3371 to 91–3374 and 91–3427.**

United States Court of Appeals, Federal Circuit.

Nov. 20, 1992.

Timothy Hannapel, Asst. Counsel, Nat. Treasury Employees Union, of Washington, D.C., argued, for petitioners. With him on the brief were Gregory O'Duden, Director of Litigation and Barbara A. Atkin, Sr. Appellate Counsel.

John Warshawsky, Attorney, Commercial Litigation Branch, Dept. of Justice, of Washington, D.C., argued, for respondent. With him on the brief were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director and James M. Kinsella, Asst. Director. Of counsel was Jeanne E. Davidson. Also on the brief were Jamie Ramon, Gen. Counsel, Thomas F. Moyer, Asst. Gen. Counsel and Earl A. Sanders, Attorney, Office of Gen. Counsel, Office of Personnel Management, of counsel.

Before MAYER, MICHEL, and CLEVENGER, Circuit Judges.

MICHEL, Circuit Judge.

This opinion decides five consolidated appeals on petition from decisions of the Merit Systems Protection Board. *Barnes v. Office of Personnel Management,* No. CH08468910164 (MSPB April 30, 1991) [53 M.S.P.R. 425 (table)]; *Goetz v. Office of Personnel Management,* No. SL08468910195 (MSPB April 30, 1991) [47 M.S.P.R. 658 (table)]; *Cox v. Office of Personnel Management,* No. PH08468910119 (MSPB April 30, 1991) [47 M.S.P.R. 657 (table)]; *Montag v. Office of Personnel Management,* No. CH08468910156 (MSPB April 30, 1991) [47 M.S.P.R. 659 (table)]; *Warman v. Office of Personnel Management,* No. SL08468910196 (MSPB May 28, 1991) [48 M.S.P.R. 450 (table)]. In each case, the Board, reviewing inconsistent initial decisions of Administrative Judges (AJs), sustained the Office of Personnel Management's (OPM's) refusal to approve the petitioner's application to transfer from the Civil Service Retirement System (CSRS) to the Federal Employees' Retirement System (FERS) after the close of the statutory transfer period. Petitioners were all Internal Revenue Service (IRS) employees. Because petitioners failed to show that causes beyond their control prevented them from making their elections during the statutory transfer period or that they were misinformed by OPM or IRS, we affirm.

## I. BACKGROUND

On June 6, 1986, Congress enacted the Federal Employees' Retirement System Act of 1986, Pub.L. No. 99–335, 100 Stat. 514 (1986) (the Act). The Act comprehensively overhauled the federal employee retirement system and created a new retirement plan, FERS. Congress believed that FERS "contains a number of advantages over the CSRS and that employees subject to the CSRS should therefore be permitted an opportunity to join." S.Rep. No. 166, 99th Cong., 2d Sess. 24, *reprinted in* 1986 U.S.C.C.A.N. 1405, 1429. Accordingly, the

Act provided that any individual who was employed by the federal government as of June 30, 1987, and was subject to the CSRS, could make an irrevocable election to transfer to FERS during the period of time from July 1, 1987 to December 31, 1987. Federal Employees' Retirement System Act of 1986, Pub.L. No. 99–335, § 301(a)(1), 100 Stat. 599 (1986) (reprinted as amended in note following 5 U.S.C. § 8331 (1988)). *See also* 5 C.F.R. § 846.-201(a), (f) (1992).

To assist employees in making transfer decisions, the government issued a handbook entitled, "FERS Transfer Handbook—A Guide to Making Your Decision." OPM provided the handbook to agencies for distribution to all employees who were eligible to transfer from CSRS to FERS.

A major factor to be considered by employees in deciding whether to elect to transfer to FERS was the public pension offset (PPO). Under the CSRS, all federal employees are subject to the PPO. *See, e.g.,* 42 U.S.C. § 402(f)(2)(A) (1988). Because of the PPO, the amount of Social Security benefits payable to an individual as a result of the individual's spouse's entitlement to Social Security benefits would be reduced if the individual also received monthly benefits as a result of prior federal, state, or local government employment. 42 U.S.C. §§ 402(b)(4)(A), 402(c)(2)(A), 402(e)(7)(A), and 402(f)(2)(A) (1988). Under the laws in force, as of the beginning of the transfer period, the PPO did not apply to FERS. Thus, federal employees eligible to transfer from CSRS to FERS, since they would have been affected by the PPO if they remained in CSRS, had a strong incentive to transfer to FERS to avoid the PPO.

Legislation was pending during the transfer period, however, that would have eliminated the PPO exemption for future FERS annuitants. Because of the uncertainty regarding the pending legislation, the government warned employees in its "FERS Transfer Handbook" that they should "consider the possibility that Congress may place restrictions on removal of the Public Pension Offset Provisions." Additionally, the IRS issued a memorandum in July 1987 advising its employees to "reconsider or delay their election until the later part of the open season" in view of the "strong indications" that the applicability of the PPO to FERS annuitants might be modified. The memorandum concluded with a warning: "Thus, if you join FERS to avoid the offset, and the rules are changed in a way that means the offset would still apply to you, you may have reduced your Basic Benefit and that of your survivor without realizing any benefit from Social Security."

The MSPB succinctly explained the legislative activity during the transfer period in *Webb v. Office of Personnel Management* as follows:

In October of 1987, the House passed legislation which would have restricted the PPO exemption to those employees who had five years of Federal service covered by Social Security after June 30, 1987 (employees who were 65 years of age or older during 1987 would have needed only six months of covered employment in order to qualify for the exemption).... Thus, ... it appeared that employees electing to change to FERS immediately before retiring might not be able to avoid the PPO. However, the bill was subsequently modified to be effective only with respect to those employees who elected to become covered under FERS during election periods occurring on or after January 1, 1988.... The result of this modification was that those employees who retired before December 31, 1987, and who elected to transfer to FERS by that date, still would avoid the PPO offset. The House passed this bill as modified on December 21, 1987, and the Senate passed it on December 22, 1987. The President signed the bill on December 22, 1987.

47 M.S.P.R. 275, 279 n. 4 (1991) (citations omitted).

OPM issued a Retirement Counselor Letter a few months after the transfer period ended. In that letter, OPM reminded agencies that they could accept requests for belated transfers from current employees when the delay in filing a request to trans-

fer was due to causes beyond the employee's control. As an example of such a cause, OPM listed "a case in which the employee was not notified, or was not otherwise aware, of the last-minute Congressional action to permit employees electing to join FERS to avoid the PPO in time to transfer to FERS by December 31, 1987."

Petitioners Barnes, Goetz, Cox, Montag, and Warman are all federal retirees who worked at the IRS Cincinnati Service Center immediately prior to retirement in late 1987. Because each of the petitioners would be entitled to Social Security benefits as the spouse of a Social Security recipient, the applicability of the PPO to FERS was an important factor to consider in making their decisions whether to transfer to FERS or to remain in CSRS. If the PPO applied, it would largely, if not completely, eliminate their Social Security benefits. Each of the petitioners retired before the law was changed on December 22, 1987. Although each of the petitioners retired during the transfer period and could have elected FERS, none of them made an affirmative election to transfer to FERS before their retirement, and each retired under the CSRS. There is no dispute that petitioners were aware of the information set forth in the "FERS Transfer Handbook" and in the July 1987 IRS memorandum. They were, of course, unaware of the Retirement Counselor's Letter, which was not published until after their retirement.

During 1988, petitioners submitted papers to the IRS requesting that they be permitted to make belated elections to transfer from CSRS to FERS under an OPM regulation allowing belated transfers when "an individual was unable, for cause beyond his or her control, to elect FERS coverage within the prescribed time limit." 5 C.F.R. § 846.204(a) (1992). Each of the petitioners argued that the congressional uncertainty regarding the possible applicability of the PPO to them under FERS was a cause beyond their control entitling them to a belated election. The petitioners also argued that the IRS misinformed them about benefits under the two alternative retirement programs, which prevented them from making an informed election.

Petitioner Barnes additionally argued that her medical condition, cervical cancer which required immediate surgery, was a cause beyond her control that prevented her from postponing her retirement until Congress acted, and entitled her to a belated election. Petitioner Montag additionally argued that her husband's deteriorating health necessitated her retirement before Congress acted and was a cause beyond her control, entitling her to a belated election.

Because petitioners were no longer employees of the federal government, the IRS had no authority to approve their attempted belated elections. Accordingly, the IRS denied their requests for belated election and forwarded the requests to OPM. On December 6, 1988, OPM issued reconsideration decisions, pursuant to 5 C.F.R. § 846.-204(c) (1992)[1], finally denying their requests for belated election.

The petitioners appealed their respective denials to the MSPB. The AJs reviewing Goetz', Cox', and Warman's appeals sustained the corresponding OPM decisions. The AJ in each case found that neither IRS nor OPM had misinformed or misled the employee as to the status of congressional uncertainty regarding the PPO exemption and that congressional uncertainty did not constitute a cause beyond the employee's control. The AJ in each case additionally found that petitioner was not given erroneous information concerning the relative benefits under the two programs.

The AJ reviewing Barnes' and Montag's appeals found that Barnes and Montag were entitled to belated elections because the IRS misled them "into believing that [they] would be better off retiring under CSRS rather than under FERS" and because they were "misled by the excessively

1. The regulation provides:

*OPM's reconsideration.* An agency decision concerning an individual's opportunity to elect FERS coverage or the effective date of

an election of FERS coverage is subject to reconsideration by OPM under § 846.205.

5 C.F.R. § 846.204(c).

cautionary information provided by the employing agency against electing FERS." With respect to Montag, the AJ additionally found that the IRS misinformed her "that she would not receive credit towards her pension for unused sick days [if she switched to FERS] as she would under CSRS." The AJ did not make any findings on either Barnes' or Montag's assertion that they could not postpone their retirement for health reasons.[2]

OPM filed petitions for review of the initial decisions regarding Barnes and Montag, while Goetz, Cox, and Warman filed petitions for review of the initial decisions applicable to them. The full Board in each of the five cases sustained the OPM's decision denying petitioners' requests for belated election, including Barnes' and Montag's requests which the AJ had allowed. In *Goetz, Cox* and *Warman*, the Board denied the retiree's petitions, but, *sua sponte*, reopened the cases, pursuant to 5 C.F.R. § 1201.117 (1992),[3] and affirmed the initial decisions, as modified by its opinion and order. In *Barnes* and *Montag*, the Board reversed the initial decisions and affirmed OPM's reconsideration decisions. *Barnes,* slip op. at 2 [53 M.S.P.R. 425 (table)]; *Montag,* slip op. at 1–2 [47 M.S.P.R. 659 (table)].

In *Barnes* and *Montag*, the Board stated that "[t]he uncertainty created by the events of late 1987, although an understandable source of frustration, do not amount to circumstances beyond the appellant's control or render the election to remain in CSRS involuntary as a result of misleading or erroneous information." *Barnes,* slip op. at 6 [53 M.S.P.R. 425 (table)]; *Montag,* slip op. at 6 [47 M.S.P.R. 659 (table)]. In all five cases, the Board concluded that *Moriarty v. Office of Personnel Management,* 47 M.S.P.R. 280 (1991), and *Webb v. Office of Personnel Management,* 47 M.S.P.R. 275 (1991), control. According to the Board, *Webb* held

that "the uncertainty attending the pending legislation did not constitute a reason beyond the appellant's control that deprived her of the opportunity to make an informed choice." *Barnes,* slip op. at 5 [53 M.S.P.R. 425 (table)]; *Goetz,* slip op. at 5 [47 M.S.P.R. 658 (table)]; *Cox,* slip op. at 5 [47 M.S.P.R. 657 (table)]; *Montag,* slip op. at 5 [47 M.S.P.R. 659 (table)]; *Warman,* slip op. at 5 [48 M.S.P.R. 450 (table)].

The Board, like the AJ, did not address Montag's contention that she could not delay her retirement due to her husband's health. In *Barnes,* the Board stated that, although Barnes' illness "caused her to have to stop working before Congress acted definitively with regard to the PPO, the record does not show that the appellant could not have postponed her retirement until after Congress acted." *Barnes,* slip op. at 5 n. * [53 M.S.P.R. 425 (table)].

## II. STATEMENT OF ISSUES

A. Did congressional uncertainty regarding the applicability of the PPO provisions to FERS amount to a cause beyond petitioners' control?

B. Are the MSPB's findings, that both petitioner Barnes and Montag could have postponed their retirement until after congressional action, unsupported by substantial evidence?

C. Are the MSPB's findings, that petitioners were not misinformed regarding their basic benefits and that petitioner Montag was not misinformed regarding the crediting of her sick leave, unsupported by substantial evidence?

## III. STANDARDS OF REVIEW

The Board's decisions in these cases must be sustained unless they are found to be:

**2.** The AJ in Barnes' case also expressly declined to address the timeliness of Barnes' request for a belated election because OPM did not raise the issue before the AJ. We, too, decline to address the issue because OPM has not raised it on appeal.

**3.** 5 C.F.R. § 1201.117 provides:

The Board may reopen an appeal and reconsider a decision of a judge on its own motion at any time, regardless of any other provision of this part.

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) obtained without procedures required by law, rule or regulation having been followed; or

(3) unsupported by substantial evidence....

5 U.S.C. § 7703(c) (1988). *See Cheeseman v. Office of Personnel Management,* 791 F.2d 138, 140 (Fed.Cir.1986), *cert. denied,* 479 U.S. 1037, 107 S.Ct. 891, 93 L.Ed.2d 844 (1987).

## IV. ANALYSIS

The burden of proving entitlement to benefits is on petitioners. *Id.* at 141. Petitioners had to show by preponderant evidence that they were entitled belatedly to elect FERS. *See* 5 C.F.R. § 1201.56(a)(2) (1992).

■ A. *Congressional Uncertainty.* Petitioners argue that they should have been permitted to make a belated election to transfer to FERS pursuant to an OPM regulation which provides:

*Belated Elections.* On determination by an employing agency office that the FERS transfer handbook issued by OPM was not available to an individual in a timely manner or an individual was unable, for cause beyond his or her control, to elect FERS coverage within the prescribed time limit, the employing office may, within 6 months after expiration of the individual's opportunity to elect FERS coverage under § 846.201, accept the individual's election of FERS coverage.

5 C.F.R. § 846.204(a). It is undisputed that each of the petitioners received the FERS transfer handbook in a timely manner. Thus, the issue here is whether petitioners were unable, for cause beyond their control, to make a timely election.

Petitioners argue that congressional uncertainty concerning the applicability of the PPO provisions to FERS was a cause beyond their control that prevented a timely

election. In support of their argument, petitioners argue that at least with respect to current employees, OPM defined "cause beyond his or her control" to include situations in which the employee "was not notified, or was not otherwise aware, of the last-minute Congressional action to permit employees electing to join FERS to avoid the PPO in time to transfer to FERS by December 31, 1987." Petitioners assert that if "congressionally created uncertainty can constitute such a cause in the case of current employees," it should also be adequate in the case of retirees. Petitioners maintain that OPM's distinction between employees and retirees is arbitrary and capricious.

As the government correctly notes, however, OPM has not permitted belated elections because of congressionally created uncertainty or confusion. OPM simply allowed employees to make a belated election to transfer to FERS if they were unable to make an election to transfer to FERS during the period December 22, 1987 through December 31, 1987 because they were unaware of the congressional action at the end of the year. Petitioners were unable to act during the last nine days of December 1987 not because they were unaware of the congressional action, but because they had already voluntarily retired.[4]

Indeed, the government indicated during oral argument that retirees who retired after December 22, 1987 were in fact treated the same as employees and were allowed belatedly to elect FERS if they were not notified, or were otherwise unaware, of the last-minute congressional action. Therefore, petitioners' assertion of discriminate treatment is unfounded.

In any event, unless petitioners could show that they could not postpone their retirement, the uncertainty concerning the congressional legislation cannot be considered a cause beyond their control that prevented a timely election. Petitioners fully understood the uncertain nature of the

---

**4.** If petitioners' argument were accepted, it would effectively allow any employee who retired before the December 22, 1987 legislation to convert to FERS simply because of Congress' failure to treat the PPO exemption prior to that date.

PPO exemption for FERS at the time of their retirements. Both the "Transfer Handbook" and the IRS memorandum emphasized that uncertainty. Petitioners do not deny that they received those publications or that they were aware of their contents. Therefore, unless petitioners could not postpone their retirements, they consciously took the risk that Congress would subsequently enact legislation which would make FERS the more beneficial option.[5] As shown below, petitioners failed to show that they could not postpone their retirement.

■ B. *Postponing Retirement.* Of the five petitioners, only Barnes and Montag argued that they could not postpone retirement until Congress acted, both asserting health-related problems.[6] In their appellate brief, petitioners stated:

> Barnes was compelled to retire because she faced imminent cancer surgery and a prolonged recuperation period, and had exhausted her sick leave. Montag was unable to delay her retirement because she was needed at home to provide long-term health care for her husband, who was suffering chronic and severe health problems.

In Barnes' case, the full Board found:

> [A]lthough the unfortunate event of the appellant's illness caused her to have to stop working before Congress acted definitively with regard to the PPO, the record does not show that the appellant could not have postponed her retirement until after Congress acted.

*Barnes*, slip op. at 5 n. * [53 M.S.P.R. 425 (table)]. Barnes disagrees with this finding and reargues on appeal the same assertions made before the Board. The Board chose not to accept those assertions as adequate to satisfy her burden of a preponderance, and we cannot overturn its finding unless petitioner shows that the Board's finding is unsupported by substantial evidence. *See* 5 U.S.C. § 7703(c); *Cheeseman*, 791 F.2d at 140. This she has failed to do.

■ In Montag's case, the Board merely stated:

> We find that all of the issues of law raised in the instant case have been addressed and resolved in *Moriarty* and *Webb*, and that the facts of this case are not sufficiently distinguishable in any material aspect to require a different result.

*Montag*, slip op. at 5–6 [47 M.S.P.R. 659 (table)].[7] This terse articulation by the Board is difficult to review and raises a question whether a remand is necessary for a proper explication of the Board's particular fact findings. Our case law requires that the Board make specific findings of fact, and we often vacate and remand where the Board fails to do so. *See Bonner v. Merit Sys. Protection Bd.*, 781 F.2d 202, 205 (Fed.Cir.1986) (stating that review of the Board's decision is "hampered" because of its failure to "specify the factual or legal grounds for its decision," but not remanding in the interest of judicial economy because the dispositive issue was a question of law); *Jackson v. Veterans Admin.*, 768 F.2d 1325, 1331

---

5. Indeed, such a risk is not unlike the risks inherent in any taxpayer's decision to make a particular investment. That Congress may subsequently change the law to make other investments more advantageous does not mean the taxpayer should be allowed subsequently to change that initial decision. By investing before congressional action is taken, the taxpayer assumes the risk that the laws will not change.

6. Petitioners also made a preliminary argument that the Board erred in requiring them to show that they could not have postponed their retirement because "[a] prospective retiree, like any other employee, is entitled to a reasonable period in which to make her decisions in full pos-

session of the relevant facts." This argument is unpersuasive. As explained *supra*, if petitioners could have postponed their retirements but chose not to, they voluntarily assumed the risk that Congress would subsequently change the law. As such, the petitioners cannot now be heard to complain when they themselves chose to cut short their election opportunities by retiring before the statutory election period expired.

7. Although the Board made the same statement in *Barnes*, we are not forced to rely on it because the Board did make an express finding against Barnes regarding postponement of her retirement. *Barnes*, slip op. at 5 n. * [53 M.S.P.R. 425 (table)].

(Fed.Cir.1985) (stating that "where the [AJ] relies expressly or by necessary implication on the demeanor of the witnesses ... we cannot sustain the board's [reversal of the AJ] unless the board has articulated a sound reason, based on the record, for its contrary evaluation of the testimonial evidence"); *Letenyei v. Department of Transportation, FAA*, 735 F.2d 528, 533 (Fed.Cir.1984) (vacating and remanding because the Board did not adequately explain its reasons for rejecting the AJ's determination).

This is not a case, however, where the Board rejected the AJ's findings as to the issue of whether petitioners could have postponed their retirements thereby requiring the Board to specifically articulate its rationale for a contrary evaluation. *See Jackson*, 768 F.2d at 1331; *Letenyei*, 735 F.2d at 533. Instead, the AJ did not make a determination in either Barnes' or Montag's case regarding whether they could have postponed their respective retirements. As such, we review the full Board's decision with respect to this issue without the constraint of a contrary earlier finding by the AJ.

The Board concluded that the facts of Montag's case are not different in any material respect from those in *Moriarty* and *Webb*. The Board in *Moriarty* stated that "the record does not show any reason why the appellant could not have postponed his retirement." *Moriarty*, 47 M.S.P.R. at 287. The Board must have implicitly found, then, that Montag's asserted reason was not sufficient to show that she could not have postponed her retirement.[8] As in the case of Barnes, Montag merely disagrees with this finding and reargues on appeal the same assertions made before the Board. Because Montag has failed to show that the Board's findings are unsupported by substantial evidence, they must be sustained. *See* 5 U.S.C. § 7703(c); *Cheeseman*, 791 F.2d at 140.

■ In applying the substantial evidence standard of review to uphold these findings in both Barnes' and Montag's cases, we are guided by the rule that an MSPB finding will not be overturned if it is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brewer v. United States Postal Serv.*, 227 Ct.Cl. 276, 647 F.2d 1093, 1096 (1981), *cert. denied*, 454 U.S. 1144, 102 S.Ct. 1005, 71 L.Ed.2d 296 (1982) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)). Likewise, we pay heed to the rule that "[i]n order to determine whether the board's finding is supported by substantial evidence, it [is] necessary for the court to 'canvas' the entire record, because '[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight.'" *Spurlock v. Department of Justice*, 894 F.2d 1328, 1330 (Fed.Cir.1990) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 465, 95 L.Ed. 456 (1951)). Unfortunately, in neither case did the Board set forth the evidence relied upon to support its conclusions. However, because of the nature of the fact finding that we are called upon to review and in the interest of judicial economy, we do not consider remand necessary. "A reasonable mind might accept" other obvious alternatives to premature retirement "as adequate to support the Board's conclusion."[9] Additionally, the evidence submitted by petitioners, as revealed in our canvas of the record, is not so overwhelming as to make the Board's findings unacceptable to a reasonable person.

■ C. *Misinformation.* Petitioners also argue that the IRS gave them misinformation which prevented them from making an informed election and which, there-

---

8. Given the fact that the same Board members found that in Barnes' case, her own health problems were inadequate to show that she could not postpone her retirement, it is reasonable to conclude that the same panel implicitly found Montag's husband's health problems likewise to be an inadequate excuse.

9. Other obvious alternatives to retirement would include: assuming leave without pay status, or in the case of Montag, hiring someone to care for her husband.

fore, entitles them to elect FERS under "common law standards." Petitioners assert that "the Board, with court approval, has long held that an employee may reverse a personnel decision when his employing agency disseminated misinformation to him upon which he reasonably relied to his detriment." While we disagree with the "long held" characterization, at least one case from this court supports the proposition. In *Frantz v. Office of Personnel Management*, 778 F.2d 783 (Fed.Cir.1985), a panel of this court reversed a decision of the MSPB and allowed petitioner to amend her survivor annuity election because, in light of conflicting advice and information given that petitioner, "a reasonable person would have remained confused over the effect of an election." *Id.* at 787. Therefore, for petitioners to be entitled to relief under this "common law standard," they would have to show that they were misled in that a reasonable person would have been confused by the inconsistent information disseminated by the IRS in their cases. Here they have not.[10]

All of the petitioners assert that the July 1987 memorandum from the IRS misinformed them regarding their basic annuity under FERS. They state that while the information in the memorandum might have been correct for employees who were not ready to retire, it was misleading for employees such as petitioners who intended to retire immediately after electing FERS because their FERS annuity would have been calculated under the CSRS rules, resulting in little or no difference between the two.

The IRS memorandum merely states, however, that "if you join FERS to avoid the offset, and the rules are changed in a way that means the offset would still apply to you, you *may* have reduced your Basic Benefit." (Emphasis added.) This language clearly leaves open the possibility that petitioners' basic benefits might not have been reduced if they joined FERS. As such, a reasonable person would not have concluded from this statement that their basic benefits would definitely be reduced if they joined FERS. The cautionary nature of the IRS memorandum and the indications in it that any predictions regarding benefits are purely speculative, additionally support the Board's findings that the petitioners were not misinformed.[11] As petitioners have failed to meet their burden of showing that these findings are unsupported by substantial evidence, they must be upheld.

Montag additionally asserts that she was misinformed by the IRS concerning the crediting of her sick leave under FERS. Montag claims that she was told that under FERS she would not get credit towards her pension for unused sick days like she would under CSRS, when in fact, because she was retiring immediately she would have been credited with the same amount of sick leave under either plan. It appears from the record on appeal that this alleged misinformation was conveyed orally to Montag from an IRS retirement counselor. In the face of the written materials provided to Montag, including the "FERS Transfer Handbook" which accurately describes the crediting of sick leave, a reasonable person would not accept the oral information as accurate. Appellant has not shown that the finding on which this analysis rests, *i.e.*, that the handbook was not misleading,

---

**10.** But even if they had, they might not prevail. *See Koyen v. Office of Personnel Management*, 973 F.2d 919, 921 (Fed.Cir.1992) (observing that *Frantz* may no longer be viable after *Office of Personnel Management v. Richmond*, 496 U.S. 414, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990)).

**11.** In the case of Goetz, Cox, and Warman, the AJs explicitly found that the petitioners were not misled. By "AFFIRM[ING] the initial decision AS MODIFIED," the full Board adopted those findings. *Goetz*, slip op. at 2 [47 M.S.P.R.

658 (table) ]; *Cox*, slip op. at 2 [47 M.S.P.R. 657 (table) ]; *Warman*, slip op. at 2 [48 M.S.P.R. 450 (table) ]. In the case of Barnes and Montag, the Board's findings on this issue are implicitly found in the Board's conclusion that *Moriarty* and *Webb* control and that those cases are factually indistinguishable from the facts in *Barnes* and *Montag*. In *Moriarty*, the MSPB considered an OPM memorandum with language identical to the IRS memorandum in these cases. The Board found that the memorandum was not misleading. *Moriarty*, 47 M.S.P.R. at 287–88.

is unsupported by substantial evidence; therefore, it must be upheld.[12]

## V. CONCLUSION

None of the theories asserted by petitioners justifies a remand. The congressional uncertainty regarding the applicability of the PPO provisions to FERS does not amount to a cause beyond petitioners' control entitling them belatedly to elect FERS pursuant to 5 C.F.R. § 846.204(a). Moreover, petitioners Barnes and Montag failed to show that the Board's findings that they could have postponed their retirement were unsupported by substantial evidence. Likewise, petitioners failed to show that the Board's findings that they were not misinformed were unsupported by substantial evidence.

AFFIRMED.

**In re Laszlo V. GAL, David W. Waite and Jonathan A. Levi.**

**No. 92–1255.**

United States Court of Appeals, Federal Circuit.

Nov. 25, 1992.

Charles J. Fassbender, San Diego, Cal., argued for appellant.

Lee E. Barrett, Office of the Sol., Arlington, Va., argued for appellee. Fred E. McKelvey, Sol. and Joseph G. Piccolo, Asst. Sol., Office of the Sol., of Arlington, Va., were on the brief for appellee; Of counsel were Albin F. Drost, Richard E. Schafer and John W. Dewhirst, Washington, D.C.

Before NEWMAN, ARCHER, and LOURIE, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

---

**12.** By holding that *Moriarty* and *Webb* control and that those cases are factually indistinguishable from the facts in *Barnes* and *Montag*, and by restating the findings in *Moriarty* and *Webb* that the handbook was accurate and properly set forth all the information available to OPM, the Board implicitly found in both Barnes' and

---

Montag's cases that the handbook was not misleading.