1 F.3d 1252
NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
 William C. YEARGAN, Petitioner,
v.
OFFICE OF PERSONNEL MANAGEMENT, Respondent.
 No. 91-3370.
 United States Court of Appeals, Federal Circuit.
 June 8, 1993.
 
 Before NEWMAN, CLEVENGER and SCHALL, Circuit Judges.
 PER CURIAM.
 
 
 1
 William C. Yeargan petitions for review of the final decision of the Merit Systems Protection Board (MSPB or Board), Docket No. AT08468910215, reversing the Administrative Judge's (AJ's) initial decision and affirming the reconsideration decision of the Office of Personnel Management (OPM) denying petitioner's request to transfer from the Civil Service Retirement System (CSRS) to the Federal Employees' Retirement System (FERS). We affirm.
 
 
 2
 * Congress enacted the Federal Employees' Retirement System Act of 1986, Pub.L. No. 99-335, 1986 U.S.C.C.A.N. (100 Stat.) 514 (FERSA) (codified as amended at 5 U.S.C. Secs. 8401-8479 (1988)) on June 6, 1986, thereby creating FERS as an alternative to the retirement benefits program existing under CSRS. Section 301(a) of FERSA provided that federal employees subject to CSRS as of June 30, 1987 could elect to transfer from CSRS to FERS, but only if that election were made during the six-month statutory time period ("open season") from July 1, 1987 to December 31, 1987. FERSA Sec. 301(a)(1)(B), 5 U.S.C. Sec. 8331 note (1988); see 5 C.F.R. Sec. 846.201(a) (1992). To explain relevant details of FERS and the consequences of transferring from CSRS to FERS, OPM issued the "FERS Transfer Handbook" to federal government employees before the beginning of the open season.
 
 
 3
 A major factor considered by many federal employees in deciding whether to transfer from CSRS to FERS was the applicability of the Public Pension Offset (PPO) provisions of the Social Security Act. See Moriarty v. Office of Personnel Management, 47 M.S.P.R. 280, 282 (1991), aff'd, No. 91-3258, --- F.2d ---- (Fed.Cir. Feb. 8, 1993) (table); Barnes v. Office of Personnel Management, 980 F.2d 708, 709-11 (Fed.Cir.1992). As FERSA was originally enacted, employees transferring from CSRS to FERS during the open season were exempt from the PPO's effect upon Social Security benefits receivable as, for example, a spouse or surviving spouse of a federal employee, because FERS unlike CSRS includes Social Security coverage for federal employees. See, e.g., 42 U.S.C. Sec. 402(b)(4)(A) (Supp. IV 1986) & 42 U.S.C. Sec. 410(a)(5)(H) (1988) (PPO does not apply to wife's benefits if, on the last day of her federal service, her "employment" was, inter alia, covered by FERS).
 
 
 4
 Even at the time of FERSA's passage, however, Congress was considering certain legislative proposals that would have eliminated FERS' exemption from the PPO, thereby subjecting employees retiring under FERS to the Offset. OPM's Handbook explained the uncertain status of the then current legislative environment regarding the PPO exemption in FERS:
 
 
 5
 Under current law, those [federal employees] who transfer to FERS are not [subject to the PPO], because Social Security is a component of FERS. However, there are some indications that Congress may reconsider whether or not the [PPO] should apply in additional situations.
 
 
 6
 FERS Transfer Handbook--A Guide To Making Your Decision 41 (1987). Additionally in July 1987, OPM distributed a memorandum that detailed the approval by a subcommittee of the House Ways & Means Committee of a proposal to restrict the availability of the exemption from the PPO to FERS participants. The memorandum, however, warned the reader that such approval did not constitute a final action, and that the ultimate outcome was unpredictable. Finally, based on information provided by OPM, each employee was provided with a letter from his employing agency cautioning the employee to consider deferring his transfer decision until Congress had clarified its position on FERS' exemption from the PPO.
 
 
 7
 The ultimate legislative compromise between the House and the Senate on the PPO issue resulted in passage of the Omnibus Budget Reconciliation Act of 1987, Pub.L. No. 100-203, Sec. 9007, 1987 U.S.C.C.A.N. (101 Stat.) 1330, 1330-289, 42 U.S.C. Sec. 402(b)(4), (c)(2), (e)(7), (f)(2) & (g)(4) (1988), on December 22, 1987, only nine days before the close of the open season. Under section 9007, the exemption from the PPO remained in effect for an employee who converted from CSRS to FERS during the specified six-month open season, i.e., before January 1, 1988. For all other individuals subject to FERS, the exemption from the PPO applied only if the employee performed at least five years of service while subject to FERS before retirement.
 
 
 8
 In early 1988, OPM promulgated a regulation allowing belated elections to transfer to FERS, after the open season, for employees satisfying the regulation's criteria:
 
 
 9
 (a) Belated elections. On determination by an employing office that the FERS transfer handbook issued by OPM was not available to an individual in a timely manner or an individual was unable, for cause beyond his or her control, to elect FERS coverage within the prescribed time limit, the employing office may, within 6 months after expiration of the individual's opportunity to elect FERS coverage under [5 C.F.R.] Sec. 846.201, accept the individual's election of FERS coverage.
 
 
 10
 (b) Correction of administrative errors related to election. During the 6-month period after the expiration of an individual's opportunity to elect FERS coverage under Sec. 846.201, the employing office may make prospective corrections of administrative errors regarding an individual's opportunity to elect FERS coverage, including failure to provide the election form ... to an individual.
 
 
 11
 5 C.F.R. Sec. 846.204(a), (b) (1992).
 
 II
 
 12
 Mr. Yeargan received the FERS Transfer Handbook and the subsequent OPM memorandum and agency letter regarding FERS' exemption from the PPO before his retirement from federal service with the Department of Health & Human Services, Social Security Administration (HHS) on August 1, 1987. As of his date of retirement, Mr. Yeargan was still covered by CSRS, having failed to elect to transfer to FERS. Mr. Yeargan first requested that he be permitted to transfer by HHS from CSRS to FERS on June 16, 1988, within section 846.204(a)'s six-month period. HHS denied his transfer request on June 29, 1988 on the grounds that HHS was without the power to authorize the transfer since he had already retired.
 
 
 13
 Mr. Yeargan sought reconsideration of HHS' decision from OPM. Reviewing Mr. Yeargan's request under 5 C.F.R. Sec. 846.204(c), OPM affirmed HHS' decision on November 1, 1988 ruling that Mr. Yeargan failed to satisfy the "cause beyond [his] control" standard of 5 C.F.R. Sec. 846.204(a). Mr. Yeargan timely appealed this decision to the Board.
 
 
 14
 In an initial decision dated February 1, 1989, the AJ reversed OPM's denial of Mr. Yeargan's request to make a retroactive election to transfer to FERS, on the ground that he "lacked accurate information" regarding the PPO and was therefore unable to make an informed election during the open season. Though Mr. Yeargan had read OPM's literature on the subject, he had also sought and received personal opinions from one of his agency's regional commissioners and from his congressman's office. These opinions both expressed doubt that FERS' then existing exemption from the PPO would survive congressional consideration of the issue. The AJ thus concluded that Mr. Yeargan "took every possible measure to obtain as much information as he could about whether the PPO would ultimately apply to FERS," and based on the conflicting advice afforded to him, "was unable to make an informed election...." Yeargan v. Office of Personnel Management, slip op. at 4-5 (Mar. 15, 1989). OPM appealed the initial decision to the full Board.
 
 
 15
 By final decision dated April 26, 1991, the Board reversed the AJ's initial decision and sustained OPM's reconsideration decision denying Mr. Yeargan's request to transfer. Relying on Webb v. Office of Personnel Management, 47 M.S.P.R. 275 (1991) and Moriarty, 47 M.S.P.R. 280, the Board held that Mr. Yeargan had not been misinformed as to the state of the law, and the uncertainty of congressional action did not constitute "cause beyond [his] control" such that his belated election to transfer should be allowed. Yeargan v. Office of Personnel Management, slip op. at 6 (Apr. 26, 1991). Mr. Yeargan timely appealed to this court.
 
 III
 
 16
 We review the Board's decision under a narrow standard, and must affirm unless the decision is: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence. 5 U.S.C. Sec. 7703(c) (1988).
 
 
 17
 Initially, this court in Barnes held that congressional uncertainty on FERS' exemption from the PPO and the accompanying confusion experienced by individuals attempting to decide whether to transfer to FERS from CSRS cannot constitute "cause beyond [the individual's] control" unless the individual demonstrated that he could not have postponed his date of retirement until Congress had resolved the issue. 980 F.2d at 713-14. Although when he chose to retire, Mr. Yeargan "felt confident" that Congress would not permit FERS' exemption from the PPO to survive, he was diligent in attempting to acquire as much information as possible on the situation before his retirement, and while we are sensitive to the degree of confusion experienced by individuals in Mr. Yeargan's position, there is no reason in the record before us to demonstrate that he could not have waited for Congress' pronouncement on the issue. Id. at 714-715; see also Moriarty, 47 M.S.P.R. at 287. Mr. Yeargan thus cannot establish "cause beyond [his] control" as the reason for his failure timely to elect FERS coverage.
 
 
 18
 On appeal, Mr. Yeargan also challenges the Board's decision on the grounds that he was treated disparately from other similarly situated persons in his employing office. Mr. Yeargan specifically cites the case of Ms. Ann Carter, Carter v. Office of Personnel Management, MSPB No. AT08468910612 (Aug. 30, 1989), claiming that OPM's differing actions in the two cases is wholly arbitrary, and that he consequently should be permitted a belated transfer to FERS. We disagree.
 
 
 19
 In both cases, each individual retired while still subject to CSRS. In both cases, each individual belatedly elected to transfer to FERS during OPM's six-month extension of the open season. In both cases, HHS denied the individual's belated request to transfer. OPM affirmed both decisions on reconsideration. In both cases, the AJ reversed OPM's reconsideration decisions and ordered that the belated election to transfer be allowed. Up to this point, then, both Ms. Carter and Mr. Yeargan were similarly situated. OPM appealed the AJ's decision in the present case, but exercised its discretion in failing to appeal the decision in Carter.
 
 
 20
 OPM's determination to appeal the AJ's decision to the full Board in Mr. Yeargan's case but not in Ms. Carter's is claimed as unlawful disparate treatment because it predictably resulted in reversal of the AJ's decision in favor of Mr. Yeargan, and left standing the decision in favor of Ms. Carter.
 
 
 21
 This court sua sponte called for additional briefing on the disparate treatment contention. The agency differentiated Ms. Carter's case from that of Mr. Yeargan on the ground that Ms. Carter's case was perceived to involve some affirmative misrepresentations from an identified official source regarding the fate of the PPO legislation at the time of making her decision whether to transfer to FERS. Mr. Yeargan states that he too was misled about whether Congress would assert a measure to make transfer to FERS unappealing. We need not decide whether there is a controlling distinction in the degree of misrepresentation because Mr. Yeargan cannot for other reasons prevail in the present appeal.
 
 
 22
 In Office of Personnel Management v. Richmond, 496 U.S. 414 (1990), the Supreme Court held that erroneous oral and written advice given by a government employee to a benefits claimant may not provide the basis for an estoppel against the government and so entitle the claimant to a monetary payment, since payments from the public fisc are properly limited to those authorized by statute. Id. at 415-16. According to OPM, it decided to allow Ms. Carter to retain her transfer by foregoing appeal to the full Board because of an official's affirmative misrepresentations to Ms. Carter. Its decision in effect estopped OPM from contesting whether Ms. Carter actually met the limitations of the "cause beyond [her] control" test of section 846.204. The agency apparently erred in light of Richmond in not appealing Ms. Carter's case. Mr. Yeargan's argument asks us to decide that because the government may have erred in a prior case, it must be estopped from avoiding such possible error in subsequent cases. Our predecessor court, however, taught that past error or unauthorized action on the part of the government cannot be held against the government in future, unrelated administrative proceedings. Baker v. United States, 222 Ct.Cl. 263, 268-69, 614 F.2d 263, 267 (1980). Thus, this court "must apply and enforce the law in the case here regardless of what ... may have [been] done in the past in another case." Id. at 269.
 
 
 23
 In the present case, Mr. Yeargan's burden was to demonstrate that the Board's decision in some way triggered our narrow standard of review. In light of Barnes, 980 F.2d at 713-16, which squarely dispenses with Mr. Yeargan's other arguments, we find nothing satisfying this requirement in the record before this court, and accordingly affirm the decision of the MSPB.