**Angelina FRANTZ, Petitioner,**

v.

**OFFICE OF PERSONNEL MANAGEMENT, Respondent.**

**Appeal No. 85-603.**

United States Court of Appeals, Federal Circuit.

Dec. 4, 1985.

John F. Schuck, Keogh, Marer & Flicker, Palo Alto, Cal., for petitioner.

John S. Groat, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for respondent. With him on brief were Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director and Robert A. Reutershan.

Before NIES, Circuit Judge, COWEN, Senior Circuit Judge, and BISSELL, Circuit Judge.

NIES, Circuit Judge.

This is an appeal from the final decision of the Merit Systems Protection board (MSPB or board), Docket No. SF08318310928, reported at 21 M.S.P.R. 652 (1984). The full board reversed the initial decision of the presiding official and upheld the ruling of the Office of Personnel Management (OPM), which denied petitioner's application to amend her survivor's annuity election. We reverse the board's decision and remand the case with instructions to accept petitioner's application.

## Background

The federal civil service retirement system has long provided the option of providing a survivor's annuity for the spouse of a retiring employee. When such an election is made, the monthly payment to the retiree is reduced. The election of a survivor's annuity or no survivor's annuity is initially made at the time the employee applies for retirement. Once a binding election is made, a change is not permitted.

Angelina Frantz retired from the General Services Administration on September 25, 1981. At the time of her retirement, she was married and had been married for 34 years. Prior to retirement, Mrs. Frantz met with the agency's personnel counselors, including Patricia Royce, who advised her that if she elected to provide a survivor's annuity for her husband and he predeceased her, she would have to continue making payments for his annuity (i.e., she would receive a reduced annuity) for the rest of her life. The retirement application, form SF–2801, which Mrs. Frantz filled out gave the same information as that given by Mrs. Royce in that it stated:

> If your wife (or husband) should die before you, no change in type of annuity will be permitted, your annuity will not be increased, nor may you name any other person as a survivor * * *.

Since Mrs. Frantz's husband was older and, therefore, as a matter of statistics, was likely to predecease Mrs. Frantz, Mrs. Royce counselled Mrs. Frantz that the election of a survivor annuity for Mr. Frantz would be financially impractical. Based on the information on the form and given in counselling, Mrs. Frantz chose not to elect a survivor's annuity for her husband. Her SF–2801 application so indicated.

The statement in the retirement application, as well as the advice given to Mrs. Frantz, is admitted by OPM to be wholly erroneous. In 1974 the retirement laws had been amended to permit an annuity to be recomputed to the higher amount without reduction for a survivor should the retiree outlive the spouse, or should the marriage be dissolved by divorce or annulment. However, OPM failed to change the SF–2801 application form until sometime in 1982.

Prior to the first payment to a retiree, OPM routinely sends out a form to the retiree on which the retiree is to confirm or to change the retiree's previous election with regard to a survivor's annuity. The form must be returned to OPM before payments will begin. This type of verification has been utilized since 1962. Its purpose is principally to confirm OPM's information as to the election already made, to advise the retiree of amounts receivable with and without a survivor's annuity, and to obtain the spouse's acknowledgment or reacknowledgment (on a separate Spouse's Notification form) that no survivor's annuity had been elected. The retiree can change an election up to this point.

Approximately five months after Mrs. Frantz retired, she received such a form (BRI 46–270A (temp.)), which we will refer to as the "confirmation form." It stated that her annuity could not be processed until that form was returned to OPM. Mrs. Frantz signed and returned that form on February 2, 1982, confirming her original election of no survivor's annuity, together with a properly executed Spouse's Notification form.

The confirmation form arguably contained accurate information with respect to the 1974 changes in the law, and OPM originally asserted in a number of cases, including this one, that the confirmation form was sufficient in itself to correct misinformation given to retirees. OPM no longer makes that assertion here or in other cases.[1] Rather, OPM asserts here that an information sheet, which bears the iden-

---

1. In *Cheeseman v. OPM,* 21 M.S.P.R. 118 (1984), a class action, the MSPB held that a confirmation form (BRI 46–270A) (received by members of the Zagorny subclass) apparently of the same substantive content as that received by Mrs. Frantz (BRI 46–270A Temp.) was not sufficient to correct the misinformation on the SF–2801. We are advised that OPM did not appeal that ruling.

tification "Form BRI 46–270 Temp." and which presumably was sent to Mrs. Frantz with the confirmation form, contains correct information, including a statement calling attention to incorrect information in the original SF–2801 annuity application. Per OPM, the information sheet should have alerted Mrs. Frantz to change her election.[2] Mrs. Frantz does not dispute that the information sheet contains correct information concerning the effect of an election of a survivor's annuity on her benefits. However, she asserts that, if she received and read the information sheet, she did not appreciate its import. She was not expecting a *major* correction of information from that on which she based her election in September, 1981. Accordingly, she merely reaffirmed her previous election.

In August, 1982, after Mrs. Frantz read several articles in a magazine for retirees which explained the misinformation she had previously received, she contacted Mrs. Royce. Mrs. Royce explained that she (Royce) had received new information on survivor's annuities through an OPM bulletin in January, 1982. Mrs. Frantz met with Mrs. Royce and was told that Mrs. Frantz would soon be receiving new forms which would enable her to change her survivor's annuity election. (Mrs. Royce testified that she understood that the law was changed in December, 1981, which was, of course, incorrect and is mentioned only to indicate the persistent confusion over retirement benefits even among those who are supposed to be most knowledgeable.)

In September, 1982, Mrs. Frantz received new forms from OPM (BRI 46–390, 390A and 395), which explained the 1974 change in the law in great detail and clarity and included another survivor annuity election form. These forms were necessitated by a settlement agreement in a class action against OPM, directed to correcting its handling of the matter of election of a survivor's annuity. *American Federation*

of *Government Employees v. Devine*, No. 81–2527 (D.D.C. April 16, 1982) (*Devine I*).

Mrs. Frantz submitted the new form to OPM, this time electing to provide a survivor's annuity for her husband. In a series of decisions, the last on July 22, 1983, OPM denied her application on the ground that she had signed the confirmation form in February, 1982, being "fully informed" of her rights.

The presiding official overturned OPM's decision, holding that Mrs. Frantz's actions did not indicate that she was fully informed in her election at that time. She remained confused. The presiding official concluded that it was obvious that OPM had issued the BRI 46–390 forms to clarify and rectify the problems created by previous forms. The presiding official also found that the information sheet, which accompanied Mrs. Frantz's confirmation form, was not "sufficiently clear" to bar petitioner's request to elect a survivor's annuity.

One of the difficulties in analyzing this case is the hopelessly confusing references by MSPB and OPM to the information sheet and the confirmation of election form by BRI 46–270 numbers which do not identify the documents precisely and, indeed, in some instances, identify them incorrectly. We have attempted to the extent possible to pinpoint which form is meant by the language which an OPM or board opinion indicates is in the document being discussed. From this comparison, it is clear that the OPM decision letter of July 22, 1983, relies on Mrs. Frantz's confirmation form as the basis for denial of her application to provide an annuity for her husband. It is unclear that OPM also relied on the information sheet. However, for purposes of this case, we will treat the denial as resting on both the confirmation form and the information sheet. The presiding official clearly held that the confirmation form *and* the information sheet were insufficient. The full board—while using the number for the confirmation form (BRI

**2.** We are advised that the information sheet was not involved in the *Cheeseman* decision cited in note 1.

46–270A Temp.)—relied on the language of the information sheet (BRI 46–270 Temp.) to bar Mrs. Frantz from changing her election.

In any event, in overturning the presiding official's decision, the board reasoned as follows:

> In the initial decision, the presiding official determined that the appellant was actually confused over her retirement benefits, and thus should be permitted to amend her annuity selection. We believe the presiding official applied an incorrect standard in considering whether appellant was actually confused, rather than determining if a reasonable person would have been confused under the same circumstances. While OPM has a responsibility to fully inform potential retirees of their retirement options, we believe that the potential retiree also has a responsibility to read the information which OPM provides and to act responsibly in making elections of retirement options.
>
> In the instant case, the record indicates that in February 1982, appellant received a copy of form BRI 46–270A Temp. [sic, should be BRI 46–270 Temp]. This form had a heading which stated, in bold faced letters, "Your Annuity Application Form, SF 2801, Contains Some Information That Is Incorrect." [Footnote omitted.]
>
> \*   \*   \*   \*   \*   \*
>
> We do not believe that appellant's error in reaffirming her choice of an annuity without survivor benefits can be attributed to OPM. Rather, appellant's error is attributable *to her own failure to carefully review form BRI 46–270A Temp. [sic] before reaffirming her annuity election. We find that form BRI–46–270A Temp. [sic] provided information which was clear enough that a reasonable person would be on notice of the change of law controlling annuities with survivor benefits effected in 1974.* Therefore, appellant is bound by her selection of an annuity without survivor benefits. [Emphasis added, footnote omitted.]

[The government asks us to make the indicated correction in the form number in interpreting the board's decision. The quoted language is from the information sheet, not the confirmation form.]

### Analysis

We agree with the board that Mrs. Frantz had to prove not only that she was confused at the time of her election, but also that a reasonable person would have been confused under the same circumstances. However, we see the board painting with too broad a brush in holding that all reasonable persons reading the information sheet would not remain confused regarding an election. Essentially, the board read the information sheet in a vacuum, that is, without considering the mindset created by the previous misinformation. This does not mean that a purely subjective test is the only alternative as urged by petitioner. Rather, the test must be whether, under the circumstances of a particular case, a reasonable person would have been confused.

With respect to the circumstances of this case, Mrs. Frantz had received erroneous information through group and individual counselling, and she had also received a retirement application with erroneous information. The later-sent confirmation form was not sent for the purpose of correcting misinformation, and OPM now admits that the confirmation form itself did not clear up the matter. Moreover, the confirmation form *did not* refer her *to the information sheet.* Rather, the confirmation form was a self-contained document with instructions therein for its completion.

Turning to the information sheet, we note that the heading states only that "some information" *on the SF–1206 form* was incorrect. A milder signal of irregularity could hardly be made when one considers the enormity of the error being corrected. The information sheet says nothing about incorrect *counselling.* It says nothing about a *major* error which is likely to have affected a person's election. It is not the equivalent in content of the forms

required by *Devine I* (the 390's series) to correct the misinformation given to retirees. It was not personal nor was the recipient required to sign, return or acknowledge its receipt. Under the circumstances of Mrs. Frantz's case, we conclude that the overwhelming weight of the evidence supports her position that a reasonable person would have remained confused over the effect of an election even though the confirmation form was accompanied by the subject information sheet. BRI 46–270 Temp. was not the red flag needed to stop a reasonable person from affirming a carefully thought out prior election. Thus, we hold that the board's decision is not supported by substantial evidence and must be overturned. 5 U.S.C. § 7703(c) (1982).

In the above discussion, we have treated the OPM decision letter as resting on the information sheet as well as the confirmation form. In fact, the OPM decision letter to Mrs. Frantz refers only to the number and language of the confirmation form.

**3.** *American Federation of Government Employees v. Devine,* No. 82–3391 (D.D.C. March 8,

Under a ruling in a second class action against OPM (*Devine II*),[3] OPM was required to reconsider denials of changes in election and to set forth *every ground* for a denial in its reconsideration decision. It was, thereafter, limited to those grounds. A strict application of that ruling would have prevented OPM from relying on the information sheet in this case. However, petitioner has not raised this argument and we, therefore, have ruled on the matter on the basis that OPM meant the "package" of the confirmation form and the information sheet in the Frantz decision letter of July 22, 1983.

REVERSED AND REMANDED.

1983) (*Devine II*).