Elizabeth H. KOYEN, Petitioner,

v.

OFFICE OF PERSONNEL
MANAGEMENT,
Respondent.

No. 91–3088.

United States Court of Appeals,
Federal Circuit.

Aug. 27, 1992.

Robert C. Price, of Price & Runnells, Bloomington, Ind., argued, for petitioner.

Phyllis Jo Baunach, of Dept. of Justice, Washington, D.C., argued, for respondent. With her on the brief were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, and Mary Mitchelson, Asst. Director. Of counsel were Jaime Ramon, Gen. Counsel, Thomas F. Moyer, Asst. Gen. Counsel, and Barbara J. Matthews–Beck, Attorney, Office of Personnel Management.

Before MICHEL, PLAGER, and RADER, Circuit Judges.

PLAGER, Circuit Judge.

Elizabeth H. Koyen (Ms. Koyen) appeals from the decision of the Merit Systems Protection Board (MSPB), No. DE08319010357 (Sept. 25, 1990). The MSPB decision upheld a determination by the Office of Personnel Management (OPM) that Ms. Koyen was not entitled to a survivor annuity after the death of her former husband, Robert W. Koyen (Koyen), a retired government employee of many years. We affirm.

BACKGROUND

The gravamen of Ms. Koyen's case is that, because of the behavior of certain officials in dealing with her husband, the Government is estopped from denying her right to a survivor annuity. The MSPB, taking the allegations at face value, held that even so no case of estoppel was made out, citing *Office of Personnel Management v. Richmond*, 496 U.S. 414, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990). For purposes of determining whether the MSPB correctly applied the law, we too accept as fact the allegations set forth in the papers submitted to OPM and the MSPB.

Given that, this is another case in which a claimant of a federal entitlement appears to have done what he was instructed to do by the responsible government officials in order to obtain his entitlement. But, it is alleged, because those instructions were wrong, the proper papers were not filed at the proper time. As a result, the entitlement is gone. The question before us is whether the courts, exercising their equity powers, can undo what the Executive feels powerless to correct.

In assessing the propriety of conduct between private parties, equitable remedies, including estoppel, traditionally are available to the courts, and on proof of the necessary facts an appropriate remedy can

be fashioned. *See, e.g., A.C. Aukerman Co. v. Chaides Construction Co.*, 960 F.2d 1020, 22 USPQ2d 1321 (Fed.Cir.1992). This dispute arises out of conduct between a lifelong employee and his employer. The significant difference here is that the latter happens to be the United States Government. We must determine the extent to which that fact affects the outcome in light of the conduct alleged.

When Koyen, a postal worker with two years of high school education, applied for retirement on October 26, 1988, he was confronted with OPM's Standard Form 2801. The form offered him three possibilities: (1) he could elect a reduced annuity with survivor annuity for a spouse, but only if he was then married; (2) he could elect an annuity payable only to him during his lifetime; or (3) he could choose a reduced annuity with survivor annuity for a person with "an insurable interest in me."

At the time he was unmarried. Allegedly he was told that to have an insurable interest one must be a dependent, such as a child; and if he wished to provide for his former spouse, which he allegedly so desired, he could only request that *after* his annuity commenced. He marked the second box on the form—a retirement annuity without any surviving spouse benefits. His retirement became effective January 3, 1989.

On or about October 19, 1989, Koyen, by then admitted to a hospital for treatment of pancreatic cancer, submitted to OPM an election to provide a survivor annuity for Ms. Koyen, a former spouse (the Koyens were divorced on August 13, 1975). Koyen died on December 12, 1989.

On February 9, 1990, OPM denied Ms. Koyen's request for survivor annuity benefits on the grounds that Koyen had not made the election *at the time of his retirement.* As OPM read the governing rules, because Koyen's divorce from Ms. Koyen took place some years before Koyen's retirement, and because he elected to forgo making such provision at the time of his retirement, he was barred by statute and regulation from later providing her survivor annuity benefits. *See* 5 U.S.C. § 8339(j)(3) (1988), discussed below; 5 C.F.R. § 831.605(a) (1991).

In her appeal to the MSPB, Ms. Koyen set forth her allegations that Koyen had been told when he applied for retirement that he could not at that time elect survivor annuity benefits for a former spouse, but that he could later change his annuity election in order to provide such benefits. She also alleged that both Koyen and their son, Robert, Jr., were told by OPM in November and December of 1989 that "everything was in order" and that OPM was "processing the election."

Ms. Koyen argued that Koyen relied on this consistently erroneous information from OPM in making his initial annuity election, and in later deciding to withdraw other survivor benefits from Ms. Koyen. Had Koyen been properly informed, she argued, he intended to and would have complied with the proper requirements for electing the former spouse survivor annuity. She further alleged that in reliance on OPM's assurances, Koyen removed her as a beneficiary of his government life insurance and substituted other beneficiaries, further to his, and her, detriment. Accordingly, argued Ms. Koyen, she should be granted the survivor annuity benefits under the principle of estoppel or other equitable grounds.

The MSPB held that the Supreme Court's reasoning in *Richmond, supra,* applied to the case. The Supreme Court held in *Richmond* that erroneous oral and written advice given by a government employee to a benefit claimant did not give rise to an estoppel against the Government based on the claimant's detrimental reliance on that advice. This animus toward estoppel against the Government is attributed to the Appropriations Clause's mandate giving Congress exclusive control over the Public Treasury. *Richmond*, 496 U.S. at 424–34, 110 S.Ct. at 2471–76. *See also Schweiker v. Hansen*, 450 U.S. 785, 788, 101 S.Ct. 1468, 1470–71, 67 L.Ed.2d 685 (1981); *Federal Crop Insurance Corp. v. Merrill*, 332 U.S. 380, 385, 68 S.Ct. 1, 3–4, 92 L.Ed. 10 (1947). The MSPB held that, in light of *Richmond*, the applicable statute and regu-

lation barred the grant of a survivor annuity to Ms. Koyen under any of her arguments.

## DISCUSSION

Ms. Koyen argues before this court that the present situation is not controlled by *Richmond,* but instead should be governed by the principles espoused in such cases as *Springer v. Office of Personnel Management,* 911 F.2d 675 (Fed.Cir.1990), *Covington v. Dep't of Health and Human Services,* 750 F.2d 937 (Fed.Cir.1984), and *Frantz v. Office of Personnel Management,* 778 F.2d 783 (Fed.Cir.1985). We disagree.

*Covington* is inapposite. In *Covington,* the issue was whether Mr. Covington's decision to retire should be considered to have been voluntary, not whether he meets the requirements for an entitlement to treasury funds. *Covington,* 750 F.2d at 941; 5 C.F.R. § 752.401(c)(3) (1984) (now 5 C.F.R. § 752.401(b)(9) (1992)).

Arguably, *Frantz* provides some support for Ms. Koyen's position. *Frantz* seems to turn on the proposition that a person who is reasonably confused at the time of election because of ambiguous or conflicting information on a form issued by the government is entitled to invalidate her election regarding an entitlement. However, not only was *Frantz* decided before the Supreme Court's definitive decision in *Richmond,* but the appellate court opinion which was overturned by the Supreme Court in *Richmond* had relied in part on *Frantz. See Richmond v. Office of Personnel Management,* 862 F.2d 294, 298–99 (Fed.Cir.1988) ("In *Frantz* ... our court itself implicitly applied estoppel against the government. We held that OPM may not deny benefits to individuals who have been affirmatively misled by agency officials as to those benefits.... [Richmond's] case is even more compelling than Frantz's because according to *all* the information the government had provided Richmond, he was safe....").

Ms. Koyen cites *Springer,* an opinion of this court which issued after the decision in *Richmond,* as stating:

> There are certain circumstances where an otherwise irrevocable election might be invalid. For example, if it was based upon misinformation, a lack of information, or he did not understand the choice between two alternatives, and his decision was not freely made.

*Springer, supra,* 911 F.2d at 677 (citations omitted). However, the quoted language is not in the court's opinion, but is in the Administrative Judge's (AJ's) opinion which was adopted by the court "except as herein modified." The court in its opinion went on to note that the AJ held, *as a matter of fact,* that no misinformation was given to Springer. Further, the court stated that, under *Richmond, as a matter of law* no estoppel would lie. *Springer,* 911 F.2d at 676–77. While admittedly the court did not deem it necessary to state with precision exactly what was modified, we understand the court to have meant that the quoted language was not controlling; at best it was dictum.

In *Richmond,* the Supreme Court held that "[w]e cannot accept the suggestion ... that the terms of a statute should be ignored based on the facts of individual cases. Here the relevant statute by its terms excludes respondent's claim, and his remedy must lie with Congress." 496 U.S. at 432, 110 S.Ct. at 2475–76 (quoted by *Springer,* 911 F.2d at 676–77). In the case at bar, the statute provides that "an election [to provide an annuity for a former spouse] shall be made at the time of retirement, or, if later, within 2 years after the date on which the marriage of the former spouse to the employee or Member is dissolved...." 5 U.S.C. § 8339(j)(3). The "or, if later" clause is clearly not applicable; the governing requirement then is that the election must be made at "the time of retirement."

In *Richmond* the claimant was misinformed and misled by a government employee who was responsible for knowing better. Assuming that Ms. Koyen can prove her facts, her case is similar to, and not significantly different from, *Richmond.* And, as was the case in both *Springer* and *Richmond,* the applicable statute clearly excludes the claim.

The Supreme Court has left no doubt that it is "the duty of all courts to observe

the conditions defined by Congress for charging the public treasury." *Schweiker v. Hansen, supra,* 450 U.S. at 788, 101 S.Ct. at 1470–71 (quoting *Federal Crop Insurance Corp. v. Merrill, supra,* 332 U.S. at 385, 68 S.Ct. at 3). Thus, despite the equities alleged in this case, we are bound by the dictates of *Richmond.* If remedy there is to be, it lies with Congress.

When reviewing a decision of the MSPB, this court must affirm that decision unless it is found to be:

1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

2) obtained without procedures required by law, rule or regulation having been followed; or

3) unsupported by substantial evidence.

*See* 5 U.S.C. § 7703(c) (1988); *Covington, supra,* 750 F.2d at 941. Because Ms. Koyen has not shown on the record before us that the MSPB decision is in violation of our standard of review in any way, we must affirm.

AFFIRMED.