**Felix S. BLOCH, Plaintiff,**

v.

**Colin POWELL, in his official capacity as United States Secretary of State,[1] Defendant.**

No. Civ.A. 98–0301(RMU).
Document Nos. 47, 48.

United States District Court, District of Columbia.

Aug. 8, 2002.

1. Although the complaint names Madeline Albright as a defendant in the action, pursuant

to Federal Rule of Civil Procedure 25(d)(1), Colin Powell substitutes as the proper defendant. FED.R.CIV.P. 25(d)(1). Indeed, Rule 25(d)(1) provides that when a public officer is a party to an action in his official capacity and during its pendency ceases to hold office, the officer's successor is automatically substituted as a party. *Id.*

Michael Jeffrey Kator, Kator, Scott & Parks, Washington, D.C., William Saad Aramony, Alexandria, Virginia, for plaintiff.

Raphael O. Gomez, Susan Rudy, DOJ Federal Programs Branch, Washington, D.C., for defendant.

## MEMORANDUM OPINION

URBINA, District Judge.

DENYING THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING THE DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

This case comes before the court after the court remanded the case to the For-

eign Service Grievance Board ("FSGB") for further review and proceedings consistent with the court's March 23, 1999 ruling directing the FSGB to consider whether the plaintiff was prohibited by law from waiving any entitlement to an annuity under the Foreign Service Retirement and Disability System ("FSRDS"). The plaintiff is a former U.S. foreign service officer who seeks judicial review of the FSGB's decision on remand. The plaintiff moves for summary judgment asserting that the FSGB's decision on remand was arbitrary and capricious in violation of the Administrative Procedure Act ("APA"), as amended, 5 U.S.C. § 701 *et seq.*, that the defendant is precluded from denying the plaintiff's annuity benefits based on a theory that the plaintiff elected those benefits uninformed of the options available to him, and because denying the plaintiff's annuity violated the Fifth Amendment's Due Process clause. The defendant is named in his official capacity as Secretary of State. Also before the court is the defendant's cross-motion for summary judgment. The case is now ripe for adjudication since the FSGB's decision on remand meets the requirements set out by the court's remand order. After consideration of the parties' submissions and the relevant law, the court denies the plaintiff's motion for summary judgment and grants the defendant's cross-motion for summary judgment.

## II. BACKGROUND

### A. Factual Background

The plaintiff began working as a foreign service officer with the U.S. Department of State in November 1958. Compl.[2] ¶ 5. In 1998 and thereafter, the Department of State accused the plaintiff of questionable activities involving national security. *Id.* Pursuant to 5 U.S.C. § 7532(a), which authorizes the head of a federal agency to suspend an employee when "necessary in the interests of national security," the defendant suspended the plaintiff without pay on February 7, 1990 and issued a proposed removal action. *Id.* ¶ 6. By letter dated July 3, 1990, the plaintiff tendered his resignation and submitted an application for retirement to the defendant. *Id.* ¶ 7. On July 5, 1990, the plaintiff, through his counsel, withdrew his request for a hearing on his proposed removal. *Id.* ¶ 8.

On July 8, 1990, the Department of State informed the plaintiff that it was considering his resignation. *Id.* ¶ 9. On November 5, 1990, the Department of State removed the plaintiff from his employment pursuant to 5 U.S.C. § 7532, stating that " 'credible and persuasive evidence' supported the charges against him." Admin. Record of Proceedings dated May 1, 1998 ("A.R.") at 136.[3]

In 1991, the plaintiff renewed his July 1990 request for retirement and challenged the defendant's authority to deny him retirement benefits. Compl. ¶ 11. In a letter dated April 2, 1992, the defendant denied the plaintiff's retirement application claiming that the defendant "declined to consent" to his voluntary retirement. A.R. at 133. On August 7, 1992, the plaintiff submitted an application for a refund of his mandatory retirement contributions on a form provided to him by the defendant

---

**2.** The plaintiff's supplemental complaint filed on September 11, 2000 is the operative complaint.

**3.** The May 1, 1998 administrative record of proceedings reflects the FSGB's initial decision. The court refers to the March 31, 2000 administrative record of proceedings, which reflects the FSGB's decision after remand, as "2d A.R."

known as optional form 138 ("OF–138"). Def's. Mot. for Summ.J. filed Mar. 15, 2002 ("Def.'s Mot. for Summ.J.") at 7. The form stated that "[if] you have five or more years of Federal civilian service you may be entitled an annuity which will be forfeited by payment of this refund." A.R. at 117. The form was apparently designed for employees who had not yet met the age and length-of-service requirements for retirement. Compl. ¶ 15. Thereafter, in October 1992, the defendant refunded the plaintiff's mandatory contributions including interest in the amount of $76,256.87. A.R. at 22.

### B. Procedural History

On March 27, 1995, the plaintiff filed a grievance with the FSGB challenging the defendant's April 2, 1992 decision denying his retirement application. *Id.* at 19. On February 20, 1996, the FSGB denied the plaintiff's grievance stating that the defendant's withholding of consent for the plaintiff's retirement was determinative and proper because the defendant removed the plaintiff for national security reasons under 5 U.S.C. § 7532. *Id.* at 82–87. The FSGB further stated that the plaintiff forfeited any claim to an annuity when he withdrew his mandatory contributions in 1992. *Id.*

On April 18, 1996, the plaintiff filed an appeal with the FSGB. *Id.* at 19. On January 15, 1997, the FSGB concluded that the plaintiff's waiver and forfeiture of any entitlement to annuity was unambiguous, valid, and binding. *Id.* at 30. On July 8, 1997, the plaintiff filed a request for reconsideration of the FSGB's decision, which the FSGB denied on August 14, 1997. *Id.* at 1–4.

Consequently, the plaintiff filed his complaint with this court to obtain judicial review of the FSGB's decision. The court remanded the case to the FSGB, holding that the FSGB's decision was arbitrary and capricious because before reaching its decision that the plaintiff's waiver was valid and binding, the FSGB failed to address the plaintiff's argument that he was prohibited under section 815 ("section 815") of the Foreign Service Act of 1980 ("FSA"), as amended, 22 U.S.C. § 3901 *et seq.,* from obtaining a refund. *Bloch v. Albright,* 43 F.Supp.2d 17, 21 (D.D.C.1999); 22 U.S.C. § 4055(a)(1)(D).

Upon remand, the FSGB again denied the plaintiff's grievance. 2d A.R. at 92–122. The FSGB considered the plaintiff's argument that the FSA prohibited him from waiving entitlement to an annuity. *Id.* at 119. While recognizing that the FSA does preclude a refund in cases where an individual would become eligible to receive an annuity under the retirement system within 31 days after filing an application, the FSGB found that at the time of the plaintiff's application for a refund, the plaintiff was ineligible to receive an immediate annuity within the 31 day period. *Id.* at 109. The FSGB ruled that the plaintiff did not meet all of the requirements of 22 U.S.C. § 4051 ("section 811") for entitlement to an annuity upon his resignation from the foreign service on July 3, 1990. *Id.* Specifically, the FSGB decided that while the plaintiff had met the age and service requirements of section 811, he did not meet section 811's requirement that the defendant must consent to the retirement. *Id.* Further, the FSGB determined that after the defendant denied the plaintiff's request for voluntary retirement, the plaintiff remained eligible for the payment of a deferred annuity at age 60 under 22 U.S.C. § 4050 ("section 810"). *Id.* The FSGB discovered, however, that the plaintiff exercised his right of election under section 810 to obtain a refund of his mandatory contributions to the retirement fund, rather than leaving the contributions in the fund and receiving an annuity com-

mencing at age 60. *Id.* at 109–10, 116–17. Thus, the FSGB determined that the plaintiff did not qualify to receive an immediate annuity, but that he did qualify to receive a lump-sum refund of his retirement contributions. *Id.* Accordingly, the FSGB denied the plaintiff's grievance concluding that the plaintiff's waiver of entitlement to the immediate annuity and his election of a lump-sum payment was lawful. *Id.* at 117, 121.

The plaintiff now appeals to this court for judicial review of the FSGB's latest decision concerning (1) whether the defendant exceeded his statutory and regulatory authority when denying consent to the plaintiff's retirement, (2) whether the plaintiff knowingly and voluntarily waived his right to his immediate annuity (also referred to as a pension) when withdrawing a lump-sum payment of his contributions to his pension, and (3) whether the defendant denied the plaintiff's constitutionally guaranteed due process rights by denying the plaintiff retirement and pension benefits. Pl.'s Mot. for Summ.J. at 2.

### III. ANALYSIS

#### A. Legal Standard for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Diamond v. Atwood,* 43 F.3d 1538, 1540 (D.C.Cir.1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "gen-

uine issue" is one of which the resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252, 106 S.Ct. 2505. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton,* 164 F.3d 671, 675 (D.C.Cir.1999); *Harding v. Gray,* 9 F.3d 150, 154 (D.C.Cir.1993). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Greene,* 164 F.3d at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (internal citations omitted).

#### B. The Scope of Review

 Since this case involves a challenge to a final administrative action, the court's review is limited to the administrative record. *Fund for Animals v. Babbitt,* 903 F.Supp. 96, 105 (D.D.C.1995) (citing

*Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973)). "Summary judgment is an appropriate procedure for resolving a challenge to a federal agency's administrative decision when review is based upon the administrative record." *Id.* (citing *Richards v. Immigration & Naturalization Serv.,* 554 F.2d 1173, 1177 (D.C.Cir.1977)). The FSA provides that "any aggrieved party may obtain judicial review of a final action of the FSGB in the district courts of the United States." 22 U.S.C. § 4140. The FSA further provides that the APA "shall apply without limitation or exception" to a district court's review. 22 U.S.C. § 4140(a). The APA requires a reviewing court to set aside an agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. Moreover, the agency's decision must evince "a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). Finally, "[w]here the agency has failed to provide a reasoned explanation, or where the record belies the agency's conclusion, [the court] must undo its action." *AT & T Co. v. Fed. Communications Comm'n,* 974 F.2d 1351, 1354 (D.C.Cir.1992).

 As the Supreme Court has explained, "the scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n,* 463 U.S. at 43, 103 S.Ct. 2856. In reviewing the action of an agency under 5 U.S.C. § 706(2)(A), the court must determine whether the agency has examined the relevant data and articulated a satisfactory explanation for its action. *Id.* "In thoroughly reviewing the agency's actions, the court considers whether the agency acted within the scope of its legal authority, whether the agency has explained its decision, whether the facts on which the agency purports to have relied have some basis in the record, and whether the agency considered the relevant factors." *Fund for Animals,* 903 F.Supp. at 105 (citing *Marsh v. Oregon Natural Res. Council,* 490 U.S. 360, 378, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989)). In addition, the plaintiff has the burden of showing "by cogent and clearly convincing evidence" that the decision was the result of a material legal error or injustice. *McDougall v. Widnall,* 20 F.Supp.2d 78, 82 (D.D.C.1998) (Green, J.) (internal citations omitted).

**C. The Court Upholds the FSGB's Decision on Remand Because the FSGB Correctly Determined That the Defendant Did Not Exceed His Statutory and Regulatory Authority When He Denied Consent Under Section 811 to the Plaintiff's Immediate Annuity**

 The scope of review under the arbitrary and capricious standard is narrow, and a district court's review of an FSGB decision is highly deferential. *Motor Vehicle Mfrs. Ass'n,* 463 U.S. at 43, 103 S.Ct. 2856. If the FSGB acted within the scope of its authority in making its decision, explaining its decision, and relying on facts supported in the record, the court will uphold the FSGB's decision. *Fund for Animals,* 903 F.Supp. at 105.

The plaintiff argues that since he met section 811's age and service requirements, he is automatically entitled to voluntary retirement with an immediate annuity. Compl. ¶ 33. The plaintiff contends that section 811's consent requirement is superseded by statutory regulation and a prior FSGB decision, and, to the extent that the defendant's consent is required, it is limited to the instance where the defendant

seeks to retain an employee in the foreign service. Pl.'s Mot. for Summ.J. at 7. The plaintiff also argues that by statute, the defendant can deny an annuity only under the Hiss Act, as amended 5 U.S.C. §§ 8312–15, and under 22 U.S.C. §§ 4010(b) and 4071(d)(d).[4] *Id.* Finally, the plaintiff asserts that even if the plaintiff's waiver of annuity was legal, the plaintiff could revoke that waiver pursuant to the Foreign Affairs Manual ("FAM"). *Id.* at 13; 3 FAM 672.7. The court disagrees and determines that the FSGB's decision that the defendant did not exceed his statutory and regulatory authority when denying consent to the plaintiff's retirement did not violate the APA. *Motor Vehicle Mfrs. Ass'n,* 463 U.S. at 43, 103 S.Ct. 2856.

First, the plaintiff contends that the defendant "enjoys no discretion to deny annuity" under section 811. *Id.* at 4. The plaintiff relies on a "separation for cause" regulation implementing section 610 of the FSA set forth in 3 FAM 763.6 to suggest that the statutory discretion of the defendant is limited and entitles an employee who meets the age and service requirements of the FSA to receive voluntary retirement. *Id.* at 5. The plaintiff relies on a prior FSGB decision, referred to as FSGB 83–54, to ground his contention that the consent requirement was superseded by regulation. *Id.* at 4.

In FSGB 83–54, a Department of State employee faced separation-for-cause proceedings under 22 U.S.C. § 4010 ("section 610"). *Id.* In that case, while the separation proceedings under section 610 were pending, the employee, who met the age and service requirements of the FSA, applied for voluntary retirement under sec-

tion 610. *Id.* FSGB 83–54 stands for the principle that, because 3 FAM 763.6 (the implementing regulation for section 610 of the FSA) provides that an employee facing removal for cause may retire, the Secretary of State's discretion under section 811 is limited in that instance. Specifically, the defendant's discretion to deny consent is limited when an employee retires while facing removal for cause proceedings under FSA section 610. Accordingly, the plaintiff proffers that in the instant case, the FSGB failed to follow not only its own precedent but also the defendant's applicable regulations. *Id.* at 3–4. This claim is not valid.

The court notes that on remand the FSGB did in fact follow FSGB precedent (i.e., FSGB 83–54) in making its decision and essentially agreed with the plaintiff stating that "[w]e see no basis in law or regulation for holding that grievant's resignation under 3 FAM 751.1 could be rejected by the Department simply because it was seeking to separate him under 5 U.S.C. § 7532." 2d A.R. at 110. But, a closer reading of the FSGB's decision on remand uncovers that while the FSGB decided that the defendant could not deny consent simply because he was seeking to separate the plaintiff under 5 U.S.C. § 7532, the FSGB did find that the serious national security concerns harbored by the foreign service constitute legitimate and rational grounds to justify the defendant's withholding of consent to immediate annuity under section 811. *Id.* at 115; 22 U.S.C. § 4051. Therefore, because the FSGB followed its guiding precedent and the defendant's applicable regulations, the

---

4. The Hiss Act is the statutory authority for denying annuity benefits if an employee is convicted (on or after dates specified in statute) of a criminal offense or engaged in other conduct specified under the statute. 5 U.S.C. §§ 8312–15. Title 22 U.S.C. §§ 4010(b) and 4071(d)(d) are the disloyalty provisions within the separation for cause provisions of the FSA. The disloyalty provisions deny retirement to foreign service officers separated from service based on disloyalty. 22 U.S.C. §§ 4010(b), 4071(d)(d).

court determines that the FSGB's decision was not arbitrary or capricious. *Motor Vehicle Mfrs. Ass'n,* 463 U.S. at 43, 103 S.Ct. 2856.

The plaintiff next argues that the FSGB's decision on remand, allowing the Secretary "unfettered discretion to deny a pension, even for punitive reasons, is absurd." Pl.'s Mot. for Summ.J. at 6. The plaintiff contends that the defendant's consent endorsing an employee's retirement is required only in the limited circumstance where the defendant seeks to retain an employee in the foreign service in times of need. *Id.* at 7, 8 (citing 22 U.S.C. § 4007(a) and (d) (stating that the Secretary may extend the service of an employee even though the Secretary never promoted that employee to a higher class and even though that employee may have exceeded the maximum time in a class); 22 U.S.C. § 4052(b)(2) (noting that the Secretary may retain a foreign service officer who has reached mandatory retirement age); 22 U.S.C. § 3948(a) (stating that the Secretary may recall a foreign service officer who has retired)). Along this line of reasoning, the plaintiff asserts that 22 U.S.C. § 4051's provision requiring the Secretary's consent to the retirement of a foreign service officer is limited to consenting to retain such officers on duty only in times of need. *Id* at 8.

The task of resolving the dispute over section 811's meaning begins where all such inquiries must begin, with the language of the statute itself. *United States v. Ron Pair Enters.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (citing *Landreth Timber Co. v. Landreth,* 471 U.S. 681, 685, 105 S.Ct. 2297, 85 L.Ed.2d

692 (1985)). In this case, the starting point is also where the inquiry ends because when the statute's language is plain, "the sole function of the courts is to enforce it according to its terms." *Ron Pair Enters.,* 489 U.S. at 241, 109 S.Ct. 1026 (citing *Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917)). By its terms, section 811 requires an applicant for any voluntary retirement to meet the age and service requirements of the FSA and to obtain the consent of the Secretary. 22 U.S.C. § 4051.[5] The plaintiff does not cite to any authority which supports circumscribing the defendant's discretionary authority under section 811 in accordance with other statutes or, as the plaintiff put it, "in times of need.." Pl.'s Mot. for Summ.J. at 8. The court determines that the FSGB's decision that section 811's plain language confers broad discretionary authority upon the Secretary to grant or withhold consent to retirement, subject only to the limitation expressed in section 811's second sentence that the Secretary shall withhold consent in the case of a participant who has not been a member of the foreign service for five years, is entirely reasonable. *Motor Vehicle Mfrs. Ass'n,* 463 U.S. at 43, 103 S.Ct. 2856; 2d A.R. at 23.

The plaintiff suggests that Congress enacted the Hiss Act and the disloyalty provisions to permit the Secretary to revoke a federal employee's right to annuity. Pl.'s Mot. for Summ.J. at 8. The plaintiff surmises that neither statutory ground for denial applies to him and that the defendant's denial circumvented these statutes. *Id.* at 9; 5 U.S.C. §§ 8312–8315; 22 U.S.C. §§ 4010(b), 4071d(d). The plaintiff is correct in asserting that the statutes do

---

**5.** Section 811 of the FSA states in pertinent part: "Any participant who is at least 50 years of age and has 20 years of creditable service ... may on his or her own application and with the consent of the Secretary be retired from the Service.... The Secretary shall withhold consent for retirement under this section by any participant who has not been a member of the Service for 5 years...." 22 U.S.C. § 4051.

not apply to him. Pl.'s Mot. for Summ.J. at 8; 5 U.S.C. §§ 8312–8315; 22 U.S.C. §§ 4010(b), 4071d(d). The defendant, however, did not try to remove the plaintiff pursuant to either statute, but rather under 5 U.S.C. § 7532 for national security reasons. 2d A.R. at 136. Section 811 is not an authority similar to the Hiss Act or to the disloyalty provisions. *Compare* 22 U.S.C. § 4051 *with* 5 U.S.C. §§ 8312–8315 *and* 22 U.S.C. §§ 4010(b), 4071d(d). Specifically, section 811 authorizes the Secretary to withhold consent to voluntary retirement but does not authorize the Secretary to deny annuity as the other referenced statutes do. *Id.*

In the instant case, the defendant appropriately withheld consent to the plaintiff's voluntary retirement under section 811 for national security reasons, which rendered the plaintiff ineligible for immediate annuity. 22 U.S.C. § 4051; 2d A.R. at 110. Indeed, according to section 811, the Secretary acted within his statutory authority to withhold consent to the plaintiff's annuity. 22 U.S.C. § 4051. Moreover, neither the Hiss Act nor the disloyalty provisions address the denial of consent to retirement (and subsequent ineligibility for immediate annuity) for national security reasons. 5 U.S.C. §§ 8312–8315; 22 U.S.C. §§ 4010(b), 4071d(d). Therefore, the court deems those statutes inapplicable, further supporting the propriety of the defendant's withholding of consent to the plaintiff's retirement.

Up until this point, the issue has centered on the plaintiff's right to an immediate annuity. The subject now shifts to the plaintiff's alleged revocation of his waiver.

The plaintiff asserts that even if he did legally waive his annuity, he can now revoke that waiver pursuant to two statutes: (1) 3 FAM 672.7,[6] which establishes that an employee entitled to annuity who waives the annuity may revoke the waiver at any time, and (2) 22 U.S.C. § 4047(c), which provides that an individual entitled to annuity may waive all or part of the annuity at any time in writing. Pl.'s Mot. for Summ.J. at 12. The FSGB's decision on remand made clear that although the plaintiff was not eligible under section 811 for an immediate annuity, the plaintiff was still eligible for a deferred annuity under section 810. 2d A.R. at 115. The plaintiff suggests that by not allowing him to revoke his waiver, the defendant violates the public policy of the aforementioned wavier provisions. *Id.* at 103. However, the plaintiff's reliance on the waiver provisions is misplaced.

At first blush, if the court were to read 3 FAM 672.7 in isolation, it would appears that the plaintiff has the right to revoke his annuity waiver since he was entitled to a deferred annuity. 3 FAM 672.7. Read in conjunction with other FAM provisions, however, the plaintiff does not have the right to revoke his waiver to his deferred annuity. Specifically, 3 FAM 672.5–1 provides in part that:

> Upon Separation Before Becoming Eligible for An Annuity or a Deferred Annuity . . . any participant who is separated from the Service . . . may elect to receive a lump-sum payment . . . or to [leave] the contributions in the Fund and receive a deferred annuity as provided by 672.4.[7] Such a separated par-

---

6. The waiver provisions provides in pertinent part that: "[a]n individual entitled to be paid an annuity may . . . decline to accept all or part of the annuity . . . [and] an annuity waiver must be in writing, . . . [and] may be re-

voked in writing at any time. . . ." 3 FAM 672.7.

7. The Discontinued Service Requirement of 3 FAM 672.4 provides in part that: "Any participant who is not eligible for an immediate

ticipant may elect a lump-sum payment ... up to the date the deferred annuity begins. An election to receive a lump-sum payment cannot be changed once it becomes final. A lump-sum payment is final when the refund check is negotiated....

3 FAM 672.5–1. This regulation makes clear that once finalized, an election to receive a lump-sum payment is irrevocable. *Id.* As indicated earlier, the plaintiff here was ineligible for a an immediate annuity. 22 U.S.C. § 4051. Furthermore, at the time he requested his lump-sum payment, the plaintiff was ineligible for a deferred annuity because he did not meet the age requirement for the discontinued service annuity pursuant to 3 FAM 672.4. Def.'s Mot. for Summ.J. at 10; 3 FAM 672.4. Accordingly, the plaintiff submitted his application for his lump-sum benefits pursuant to 3 FAM 672.5–1 on the required application form. 2d A.R. at 117. It is undisputed that the plaintiff received the mandatory contributions. *Id.;* Pl.'s Mot. for Summ.J. at 1; Def.'s Mot. for Summ.J. at 8. Therefore, pursuant to the very regulation that allowed him to elect to receive his contributions in a lump-sum payment, i.e., 3 FAM 672.5–1, the plaintiff also forfeited any revocation of rights that he had. 3 FAM 672.5–1. Accordingly, after considering the parties' arguments and giving due deference to the FSGB, the court determines that the FSGB's decision was not in violation of the APA. *Motor Vehicle Mfrs. Ass'n,* 463 U.S. at 43, 103 S.Ct. 2856. Simply put, the Secretary did not exceed his statutory or regulatory authority in denying consent to the plaintiff's voluntary retirement and subsequent denial of immediate annuity. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

### D. The Plaintiff Knowingly and Voluntarily Waived His Right to His Pension When He Elected to Withdraw His Pension Contributions

The plaintiff suggests that he was unable to legally make a knowing and voluntary election of benefits because he was misled by the defendant. Pl.'s Mot. for Summ.J. at 14. The plaintiff argues that when he applied for a refund of his mandatory retirement contributions after the defendant withheld consent to the plaintiff's voluntary retirement under section 811, the defendant omitted the fact that the plaintiff had the option of waiting for a deferred annuity rather than electing his benefits. *Id.* Further, the plaintiff asserts that a complex pension issue was involved and that a reasonable person would not have made an informed decision given the circumstances the plaintiff faced. *Id.* at 15. The plaintiff's argument is without merit.

Primarily, the plaintiff posits that it is irrelevant whether the FSGB couches the denial of the plaintiff's annuity as a waiver, as it did in the 1997 decision, or as an election of benefits, as it did in its 2000 decision, because the question of the plaintiff's voluntariness to abide by such an agreement remains the same.[8] *Id.* at 14. The plaintiff asserts that the defendant's omissions as to the choices available to the

---

annuity ... may, upon separation from the Service or at any time prior to becoming eligible for an annuity, elect ... to have the contributions returned ... or to leave such contributions in the Fund and to receive a deferred annuity commencing at age 60...." 3 FAM 672.4.

8. To place the discussion in very simple terms, the plaintiff is calling the bird a chicken while the FSGB says that it is an eagle. Whether it is a chicken or an eagle doesn't change the fact that both are birds. Similarly, to call the plaintiff's agreement an election or a waiver is much less the point than realizing that the subject is an agreement entered into by the plaintiff.

plaintiff misled the plaintiff. *Id.* The plaintiff proffers that in the FSGB's writings to the plaintiff in 1992 and 1996, the FSGB made it clear to him that he had no other option than to withdraw his contributions because the Secretary had denied consent to his voluntary retirement. *Id.* at 18. To support his position, the plaintiff relies on *Covington v. Dep't of Health and Human Servs.,* 750 F.2d 937, 943 (Fed.Cir. 1984), which stands for the proposition that an employee's decision based on misinformation or lack of information cannot be binding. *Id.* While the court agrees with the plaintiff's cited caselaw, the analysis of the question cannot end there.

■ The test for determining if an employee's election is due to improper information is "whether, under the circumstances of a particular case, a reasonable person would have been confused." *Frantz v. Office of Pers. Mgmt.,* 778 F.2d 783, 786 (Fed.Cir.1985). In other words, if an employee materially relies on misinformation to his detriment, it is sufficient if the employee shows that a reasonable person would have been misled by the agency's statements. *Covington,* 750 F.2d at 942 (citing *Scharf v. Dep't of the Air Force,* 710 F.2d 1572, 1574–75 (Fed.Cir.1983)). Applying an objective test, the court will neither inquire into the subjective perceptions of the employee nor the subjective intentions of the agency. *Scharf,* 710 F.2d at 1575.

■ The court determines that a reasonable person would not have been confused in the instant case and, therefore, the plaintiff made an informed election of benefits under section 810. *Frantz,* 778 F.2d at 786. First, not only was the plaintiff a foreign service officer for 32 years, it is important to note that he was represented by counsel at every step in the proceedings. Compl. ¶ 5; A.R. at 74–77. As such, it is only reasonable to expect the plaintiff

to be acutely familiar with the foreign service's regulations. *Frantz,* 778 F.2d at 786. Second, the plaintiff does not dispute that an alternative to the voluntary retirement under section 811 is the discontinued service annuity under section 810, which can be obtained at age 60, provided the service requirements have been met. Pl.'s Mot. for Summ.J. at 17. This point is significant because a reasonable person in the plaintiff's shoes with the assistance of legal counsel should have been aware of all the options available to him. *Frantz,* 778 F.2d at 786. Rather unconvincingly the plaintiff argues that he was unaware of such an alternative under section 810. *Id.* This argument is especially without merit in light of the fact that the plaintiff had ample time to consider his benefit options. 2d A.R. at 96. Four months elapsed from the time the defendant informed the plaintiff that the defendant would not consent to voluntary retirement until the time the plaintiff submitted his application for benefits under section 810. *Id.* The court determines that four months is more than adequate time for a reasonable person in the plaintiff's shoes with legal representation to research his available options. *Frantz,* 778 F.2d at 786; *Covington,* 750 F.2d at 942. Therefore, the FSGB's decision that the plaintiff elected to receive his lump sum benefits is not arbitrary or capricious. *Motor Vehicle Mfrs. Ass'n,* 463 U.S. at 43, 103 S.Ct. 2856.

Finally, the court gives due deference to the FSGB concerning the clarity of the form (i.e., OF–138) which the plaintiff used to apply for his refund. *Id.* OF–138 provides that "an election to receive a lump-sum payment cannot be changed once it becomes final." 3 FAM 672.5; 2d A.R. at 117. More importantly, the FSGB noted that OF–138 states "in readily observable language" that: "if you have five or more years of Federal civilian service you may

be entitled to an annuity which will be forfeited by payment of this refund." 3 FAM 672.5; 2d A.R. at 117. The plaintiff does not dispute the language of OF–138, rather the plaintiff argues that the FSGB's writings to the plaintiff in 1992 and in 1996 omitted information that misled the plaintiff concerning his available options. Pl.'s Mot. for Summ.J. at 14. The court determines that while the 1992 correspondence to the plaintiff correctly indicated that the plaintiff was entitled to a refund of his contributions under section 815, it did not indicate that section 815 was the plaintiff's only option. A.R. at 133. Indeed, coupled with the "readily observable language" of OF–138, a reasonable person, represented by counsel, could deduce that there were other available options. *Covington,* 750 F.2d at 942; 3 FAM 672.5.

Moreover, the plaintiff wrongly relies on the 1996 correspondence to support his arguments about what happened in 1992. Pl.'s Mot. for Summ.J. at 18. To wit, regardless of the veracity of the statements in the 1996 correspondence, the plaintiff did not rely on those statements in 1992 when he elected his benefits under section 810. For the court to give the 1996 statements retroactive effect would be unreasonable and no authority has been cited by the plaintiff to the contrary. *Id.* For these reasons, the court determines that the FSGB's decision was not arbitrary or capricious and that the plaintiff should not have been misled by the defendant's statements. *Motor Vehicle Mfrs. Ass'n,* 463 U.S. at 43, 103 S.Ct. 2856; *Covington,* 750 F.2d at 942 (citing *Scharf,* 710 F.2d at 1574–75). As such, the plaintiff knowingly elected his benefits under section 810. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548 (stating that to prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element es-

sential to that party's case, and on which that party will bear the burden of proof at trial").

### E. The Defendant Did Not Deny the Plaintiff's Right to Due Process

The plaintiff suggests that the defendant wrongfully denied the plaintiff his due process rights set forth in the Hiss Act and the disloyalty provisions. Pl.'s Mot. for Summ.J. at 20. The plaintiff additionally asserts that a vested right in annuity is a property interest and the defendant's failure to give the plaintiff notice and an opportunity to be heard violates the due process mandates of the Fifth Amendment. *Id.* at 23–24. Contrary to the plaintiff's claims, the defendant did not deny the plaintiff's right to due process.

The plaintiff's argument that he was not afforded the due process protections of the Hiss Act or the disloyalty provisions is tenuous at best. As mentioned already, the plaintiff not only admits that the Hiss Act and the disloyalty provisions do not apply to him but argues to this court that because those statutory provisions are not applicable to this case, the defendant could not rightfully deny the plaintiff his annuity. *Id.* at 8–9. Oddly, the plaintiff argues on the one hand that the statutes are not applicable and on the other hand that the he was denied the due process protections provided by those statutes. *Id.* at 8, 20. The plaintiff cannot have it both ways. Even more important is the undisputed fact that the defendant never tried to remove the plaintiff under the Hiss Act or the disloyalty provisions. A.R. at 136. In addition, this court already determined that the plaintiff's cited statutes are not applicable and were never invoked by the defendant during the removal action. *Infra at* III.C.; 5 U.S.C. §§ 8312–8315; 22 U.S.C. §§ 4010(b), 4071d(d). The court thus concludes that the plaintiff's due pro-

cess argument is ungrounded. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

■ Lastly, the plaintiff argues that he had a vested property interest in his annuity and that the defendant's actions resulted in an unconstitutional taking of property in violation of the Fifth Amendment's due process clause because the defendant denied the plaintiff notice and an opportunity to be heard before the defendant denied consent to the plaintiff's retirement. Pl.'s Mot. for Summ.J. at 20. The plaintiff argues that courts consistently find property rights when an employer's pension system clearly gives its employees a vested right in retirement annuities if they qualify for them. *Id.* (citing *Mallette v. Arlington County Employees' Supplemental Ret. Sys. II,* 91 F.3d 630, 636 (4th Cir.1996)). The court agrees with the plaintiff's cited caselaw but determines that the plaintiff was not qualified for annuity and therefore had no cognizable property rights to such an annuity in the first place. 22 U.S.C. § 4051; *Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

The plaintiff, however, is entitled to procedural due process if he holds a constitutionally protected property interest in the subject benefits. *Roth,* 408 U.S. at 569, 92 S.Ct. 2701. Such a property right exists only when the person claiming it has a "legitimate claim of entitlement to it." *Id.* at 577, 92 S.Ct. 2701. Federal workers' entitlement to pay and other benefits "must be determined by reference to the statutes and regulations governing [compensation], rather than to ordinary contract principles." *Kizas v. Webster,* 707 F.2d 524, 535 (D.C.Cir.1983). Thus, to decide whether the plaintiff has a property interest, the court must look for an independent source of a "claim of entitlement." *Mallette,* 91 F.3d at 634–35. In the instant case, any property interest the plaintiff

had to annuity derives from sections 810 and 811, "the regulations governing compensation." *Kizas,* 707 F.2d at 535. The Secretary withheld consent to the plaintiff's voluntary retirement under section 811 for national security reasons, which, as this court determined earlier, the Secretary has the authority to do, and which rendered the plaintiff ineligible for immediate annuity. *Infra* at III.C.; 2d A.R. at 110. The plaintiff had no legitimate claim of entitlement to the annuity, accordingly he had no property interest. *Roth,* 408 U.S. at 569, 92 S.Ct. 2701. Moreover, when the plaintiff chose to receive a refund of his contributions, he extinguished any future claim he may have had to annuity. *Infra* at III.D.; 2d A.R. at 117 (referring to the language of OF–138). Therefore, according due deference to the FSGB, this court determines that the FSGB's decision is not arbitrary or capricious and that the defendant did not deny the plaintiff's right to due process. *Motor Vehicle Mfrs. Ass'n,* 463 U.S. at 43, 103 S.Ct. 2856; *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

## IV. CONCLUSION

For the foregoing reasons, the court denies the plaintiff's motion for summary judgment and grants the defendant's cross-motion for summary judgment. An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this _____ day of August 2002.